IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Michael Davis, *et al.*, | ) | Case No. 4:17-cv-391-DCC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Horry County Council, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on the Motion to Dismiss filed by Defendants United States Parachute Association ("USPA"), Ed Scott, and Randy Ottinger. ECF No. 213. Plaintiffs filed a Response in Opposition, and the Defendants filed a Reply. ECF Nos. 219, 226. Accordingly, the Motion is ripe for consideration.

## **FACTUAL HISTORY**[1]

Plaintiffs are eleven individuals who claim prior employment with, or ownership of, the business Skydive Myrtle Beach. In March 2012, Plaintiffs made plans to open Skydive Myrtle Beach, Inc. "to provide recreational skydiving activities at the Grand Strand Regional Airport ["the Airport"] in Myrtle Beach, South Carolina, which is owned by Horry County." ECF No. 207 at 5. During this period of time, the Airport was operated by Grand Strand Aviation, Inc., and was known as "Ramp 66." *Id.* at 6. Ramp 66 and the Horry County Department of Airports agreed to allow Skydive Myrtle Beach, Inc. to carry out recreational skydiving activities at the Airport. Despite this agreement, Robinson Aviation, Inc., which was under contract to provide air traffic control and tower services to the

---

[1] In light of the procedural posture of the case, the Court views the allegations of the Second Amended Complaint in the light most favorable to the Plaintiffs.

1

Airport, "initially balked" at permitting recreational skydiving, "stating that it was Robinson Aviation's policy not to allow skydiving at any of the airports at which Robinson provides tower management." *Id.* "Eventually, however, Robinson Aviation was required to back down since the Federal Aviation Authority ["FAA"] controls skydiving, and Robinson Aviation could not determine federal law on its own." *Id.*

On May 10, 2012, Skydive Myrtle Beach signed an eight-year lease with Ramp 66 "and also executed a Letter of Agreement with Ramp 66, the Airport tower, and the Horry County Department of Airports." *Id.* However, these parties never briefed Plaintiffs on the Airport's Landing Operations Area ("LOA") or provided Plaintiffs with an official airport operation brief. *Id.* From April to May 2012, Skydive Myrtle Beach "gained access and commenced skydiving." *Id.* On March 21, 2013, Horry County announced that it was resuming control of the Airport from Ramp 66. *Id.* Starting in May 2013, Ramp 66 attempted to make Skydive Myrtle Beach sign a new lease due to Horry County's takeover of the Airport, but Skydive Myrtle Beach refused. *Id.* However, on July 1, 2013, the Horry County Department of Airports required Skydive Myrtle Beach to sign "a space use permit" or to vacate the Airport property.[2] *Id.* This was intended to be a temporary measure until Horry County created new leases for all tenants. *Id.*

---

[2] The Second Amended Complaint provides conflicting dates for the signing of the space use permit. Initially, Plaintiffs contend Skydive Myrtle Beach was required to sign the permit on July 1, 2013. ECF No. 207 at 6. Later in the same paragraph, Plaintiffs state that Skydive Myrtle Beach "signed the space use permit on September 10, 2013. *Id.* However, on the next page of the Second Amended Complaint, Plaintiffs state that Skydive Myrtle Beach signed the space use permit on September 18, 2013. *Id.* at 7. While these inconsistencies are not determinative in any of the pending Motions to Dismiss, they highlight the convoluted and confusing nature of the Second Amended Complaint.

On September 13, 2013, the Airport and the Horry County Department of Airports notified Skydive Myrtle Beach that they were "interested in bringing in a bigger aircraft, in order to start to increase business." *Id.* at 6–7. On that day, Skydive Myrtle Beach asked when it would receive a new lease from Horry County and was told that it would take several more weeks. *Id.* at 7. According to Plaintiffs, a campaign of harassment began around this time. For example, on October 2013, Plaintiffs discovered that their business mail was not being forwarded from the front desk at the Airport and that there were lost parcels of mail and packages that were returned to sender. *Id.* Over the next few weeks, Plaintiffs were unilaterally told to relocate their landing zone to a smaller and less safe area, received no assistance in procuring permits and logistical support for skydiving activities, and obtained no resolution for their mail difficulties. *Id.*

This harassment continued, as the Horry County Department of Airports enlisted the support of a police officer to place restrictions on Plaintiffs' activities and accuse Plaintiffs of violating various Airport policies. *Id.* at 8. In January 2014, Skydive Myrtle Beach was fined by the Fire Marshall for a defective circuit panel, which Skydive Myrtle Beach had been asking the Horry County Department of Airports to fix. *Id.* at 9. Additionally, Plaintiff Aaron Holly began receiving emails from the Airport about jumpers landing outside of the approved landing area. *Id.* However, Plaintiffs did not receive any official communications from the FAA, and there was no official investigation by any federal authorities. *Id.* On top of these harassing communications, the Airport's tower began placing holds on Skydive Myrtle Beach while skydivers were in the air. *Id.* This cost Plaintiffs "a huge amount of money due to fuel and hours on the airplane." *Id.*

3

On February 5, 2014, Plaintiff Holly caught an Airport employee breaking into Plaintiffs' hangar with two unauthorized contractors. *Id.* This caused Skydive Myrtle Beach to shut down for two days to inspect its plane and equipment. *Id.* In response, Plaintiff Holly requested a meeting to clear the air with the Airport and FAA. *Id.* This meeting took place on February 7, 2014 but was unproductive. *Id.* After this meeting, Plaintiffs determined that the Airport was seeking to shut down Skydive Myrtle Beach. *Id.* While this harassment continued, Plaintiffs' "received a letter from Horry County attorney Randolph Haldi of allegations of violations, and a 72-hour notice to vacate" unless Skydive Myrtle Beach signed a new lease giving the Airport 24% of its gross profits. *Id.* at 10.

After months of confusion related to determining what rules and regulations the Airport expected Skydive Myrtle Beach to comply with, the tension between the parties escalated. *Id.* at 12. On September 1, 2015, the FAA wrote a letter to the Horry County Department of Airports stating that 91 violations were reported by the Airport. *Id.* at 13. As it turns out, the Horry County Department of Airports "and Robinson Aviation employees filed some 112 'safety violations' against the Plaintiff(s) during the period of March 29, 2013 and September 27, 2015" which were not investigated by the FAA. *Id.* On October 15, 2015, Plaintiffs received an email giving them 24 hours to vacate the hangar. *Id.* Plaintiffs complied with the request in order to avoid criminal charges. *Id.*

Plaintiffs contend that the alleged violations were unfounded, including some alleged violations that were said to have taken place on dates that Plaintiffs did not conduct jumps. In 2014, Plaintiffs filed a Complaint with the FAA in what is known as a Part 16 proceeding. The Complaint states that Horry County's "actions, including

4

attempts to restrict the landing area (Drop Zone or DZ) and reporting violations as 'safety concerns,' are unreasonably restrictive and discriminatory as applied to an FAA-recognized aeronautical activity—skydiving." *See Skydive Myrtle Beach, Inc. v. Horry Cty. Dep't of Airports*, FAA Docket No. 16-14-05, Director's Determination at 1 (Oct. 7, 2015). Randall S. Fiertz, Director of Airport Compliance and Management Analysis for the FAA, issued a Determination on October 7, 2015, which found that Horry County was not engaged in economic discrimination against Skydive Myrtle Beach and that "[u]nless immediate steps are taken, up to and including closure of the DZ, [Horry] County will be considered to be in violation of [a federal grant]."[3] *Id.* at 66.

Plaintiffs then filed an administrative appeal with the FAA, and the FAA issued a Final Agency Decision affirming the Director's Determination on August 4, 2016.[4] *Skydive Myrtle Beach, Inc. v. Horry Cty. Dep't of Airports*, FAA Docket No. 16-14-05, Final Agency Decision (Aug. 4, 2016). The Final Agency Decision advised Plaintiffs that they could petition for judicial review "in the United States Court of Appeals for the District of Columbia Circuit or in the Court of Appeals of the United States for the Circuit in which the [Plaintiffs reside] or [have their] principal place of business." *Id.* at 9. Plaintiffs filed an appeal of the Part 16 Determination in the Fourth Circuit; however, the appeal was untimely and denied by the Court. *Skydive Myrtle Beach, Inc. v. Horry Cty. Dep't of Airports*, 735 F. App'x 810 (4th Cir. 2018).

---

[3] https://part16.airports.faa.gov/pdf/16-14-05b.pdf.

[4] https://part16.airports.faa.gov/pdf/16-14-05.pdf.

5

## PROCEDURAL BACKGROUND

Initially, each Plaintiff filed factually identical cases pro se, naming a large group of Defendants in each lawsuit. ECF No. 199 (citing initial pro se cases). The Court "considered consolidating the matters for pre-trial handling and trial but concluded that because each of the [P]laintiffs was pro se, consolidation would be problematic." ECF No. 199. Indeed, while Plaintiffs' cases proceeded individually and pro se, there were a large number of dispositive motions filed, leading to extensive briefing, many rulings by the Court, and several Amended Complaints.

On July 10, 2018, nearly a year and a half after this federal litigation began, attorney Robert Bratton Varnado filed a Notice of Appearance on behalf of all Plaintiffs. ECF No. 191. The following day, Plaintiffs' counsel filed a Motion to Consolidate the individual cases and sought an extension of time to reply to the various pending dispositive motions. ECF No. 194. Generally, Defendants opposed consolidation, claiming defects in Plaintiffs' pleadings, failure to serve those pleadings or name Defendants uniformly, and prejudice resulting from consolidation prior to ruling on dispositive motions. See ECF Nos. 195–98.

On August 31, 2018, the Court consolidated the eleven cases pursuant to Federal Rule of Civil Procedure 42(a) and directed Mr. Varnado to file a consolidated Amended Complaint in *Davis v. Horry County Council*, 4:17-cv-391 by September 15, 2018. ECF No. 199. On September 11, 2018, Plaintiffs requested additional time to file their consolidated Amended Complaint, and the Court extended the deadline until October 1, 2018. ECF Nos. 200–01.

On October 1, 2018, Plaintiffs filed an Amended Complaint. ECF No. 203. On October 9, 2018, the Court entered a Text Order striking Plaintiffs' Amended Complaint because the Amended Complaint omitted Plaintiff Amanda Boulineau and added a party-plaintiff, Skydive Myrtle Beach, Inc., without authorization from the Court or consent from all Defendants. ECF No. 205. The Court directed Plaintiffs' counsel to file a Second Amended Complaint that complied with its August 31, 2018, Order within three days. *Id.* Plaintiffs filed a Second Amended Complaint in compliance with the Court's Order.[5] ECF No. 207. Thereafter, on October 16, 2018, the Court dismissed the other ten pro se cases so that the consolidated case could proceed without duplicative litigation. ECF No. 208.

Plaintiffs' Second Amended Complaint named five groups of Defendants: **(1)** Defendants Horry County Department of Airports, Pat Apone, Charles Bree, Chad Cox, Ed Dingley, Brett Cullen, Heather Solomon, John (or Jack) Teal, Tim Jackson, Horry County Council, Harold Worley, Mark Lazarus, Bill Howard, Jimmy Washington, Gary Loftus, Tyler Servant, Cam Crawford, Harold Phillips, Johnny Vaught, W. Paul Prince, Jody Prince, Al Allen, Lisa Bourcier, Arrigo Carotti, Randolph Haldi, and Frank Venegas (collectively, "Horry County Defendants"); **(2)** Defendants Robinson Aviation, Inc., Glenn Ray, Jack Griffin, Bill Tiller, and Phill Zell (collectively, "Robinson Aviation Defendants"); **(3)** Defendants USPA, Randy Ottinger, and Ed Scott (collectively, "USPA Defendants"); **(4)** Defendant FAA; and **(5)** Defendants James Cline, James Dangerfield, Howard Hollis, Gary Pendleton, Robert Giguere, Daryl McMillen, Herman Smith, Thomas Winston, Daniel Jones, and Larry Ayers (collectively, "Individual Federal Defendants"). ECF No.

---

[5] The caption of Plaintiffs' Second Amended Complaint does not precisely mirror the Defendants named in the Second Amended Complaint. However, the dispositive motions pending in this case dispose of all parties against whom claims have been filed.

207. Additionally, Plaintiffs named Defendant State of South Carolina "for the purpose of notice."[6] *Id.* at 4–5.

Plaintiffs' Complaint alleges eleven causes of action: **(1)** Violation of 42 U.S.C. § 1983 as to Horry County Defendants; **(2)** Implied Constitutional Action for Damages Under *Bivens*[7] as to Individual Federal Defendants; **(3)** Civil Conspiracy as to All Defendants; **(4)** Fraud and/or Constructive Fraud as to All Defendants; **(5)** Violation of South Carolina's Unfair Trade Practices Act as to Defendant Robinson Aviation, Inc.; **(6)** Breach of Contract as to USPA Defendants; **(7)** Breach of Contract & Wrongful Eviction as to Horry County Defendants; **(8)** Breach of Contract – Letter of Agreement as to Horry County Defendants; **(9)** Trespass and Wrongful Held Property as to Defendants Tim Jackson, Jack Teal, Charles Bree, Arrigo Carotti; **(10)** Negligence and Negligent Misrepresentation as to All Defendants; and **(11)** Declaratory Judgment as to Defendants FAA and Horry County Department of Airports.

Following the filing of the Second Amended Complaint, Defendants filed a series of dispositive motions. *See* ECF Nos. 212 (Motion to Dismiss by Defendant FAA); 213 (Motion to Dismiss by USPA Defendants); 214 (Motion to Dismiss by Individual Federal Defendants); 215 (Motion to Dismiss by Robinson Aviation Defendants); 216 (Motion to Dimiss by Horry County Defendants). These Motions have been fully briefed, and the

---

[6] The Court previously dismissed the State of South Carolina as a party defendant. ECF No. 77. While Plaintiffs have named the State of South Carolina as a party defendant, they have alleged no cause of action relating to the State of South Carolina. Accordingly, the State of South Carolina is not a valid party to this action.

[7] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Court heard oral arguments from the parties on April 30, 2019. Accordingly, the Motions are ripe for review.

## **LEGAL STANDARD**

When a defendant challenges the Court's personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of proving that jurisdiction exists by a preponderance of the evidence. *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). "If the existence of jurisdiction turns on disputed factual questions[,] the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, when "a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *In re Celotex Corp.*, 124 F.3d at 628 (quoting *Combs*, 886 F.2d at 676). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993)). Additionally, "'[i]n reviewing the record before it, a court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306 (D.S.C. 1992) (quoting *VDI Techs. v. Price*, 781 F. Supp. 85, 87 (D.N.H. 1991)).

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. Fed. R. Civ. P. 4(k)(1)(A). Thus, "for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 134 (4th Cir. 1996)).

South Carolina's long-arm statute provides as follows:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803(A). "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (citations omitted). "Consequently, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Id.* (quoting *Stover*, 84 F.3d at 135–36). The central constitutional question the Court must address is whether the defendant has established "minimum contacts with [South Carolina] such that the maintenance of the suit does not

offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Viewed through this constitutional lens, personal jurisdiction may arise through specific jurisdiction, which is based on the conduct alleged in the lawsuit, or through general jurisdiction. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). Under general jurisdiction, a defendant's contacts or activities in the forum state do not provide the basis for the suit. *Id.* Instead, when a defendant has "continuous and systematic" contacts with the forum state, the defendant "may be sued in [the forum] state for any reason, regardless of where the relevant conduct occurred." *Id.* (citations omitted). When the defendant is a corporation, "general jurisdiction requires affiliations 'so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State,' *i.e.*, comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 159 n.11 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

In contrast, under specific jurisdiction, a defendant may be sued in this Court if the litigation results from alleged injuries that arose out of or related to their contacts with South Carolina and those contacts were sufficient. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). To determine whether specific jurisdiction exists, courts employ a "minimum contacts" analysis that examines: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."

*ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted). This analysis focuses on the relationship between the defendant, the forum, and the litigation; therefore, the Supreme Court has emphasized "[t]wo related aspects of this necessary relationship." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (internal quotation omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Second, [the] minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (internal quotation omitted) (citing *Int'l Shoe Co.*, 326 U.S. at 319).

## **DISCUSSION**

The USPA Defendants contend that Plaintiffs' Second Amended Complaint should be dismissed because Plaintiffs' failed to establish that the Court has personal jurisdiction over the USPA Defendants. ECF No. 213. Additionally, the USPA Defendants contend that Plaintiffs' claims fail on the merits and seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). As detailed below, the Court finds that it lacks personal jurisdiction over the USPA Defendants; accordingly, the Court need not reach the merits of Plaintiffs' claims against the USPA Defendants.

"Defendant USPA is a voluntary non-profit national membership organization of individuals who enjoy and support the sport of skydiving." *Id.* at 4 (citation omitted). Defendant USPA "is incorporated in New York and headquartered in Fredericksburg, Virginia." *Id.* Defendant Ed Scott is the Executive Director for Defendant USPA and resides in Virginia, and Defendant Randy Ottinger is the Director of Government Relations for Defendant USPA and resides in Maryland. *Id.* Although Plaintiffs have alleged several

claims against the USPA Defendants, Plaintiffs have only included cursory factual allegations related to these Defendants. *See* ECF No. 207 at 29. The crux of Plaintiffs' factual claims is that the USPA Defendants accepted money from the Plaintiffs in order to fund a legal defense fund. *Id.* However, there is no evidence that the USPA Defendants solicited money from Plaintiffs for a defense fund, nor is there any evidence that the USPA Defendants even *have* a defense fund. Plaintiffs' cursory allegations are insufficient to demonstrate that any of the USPA Defendants engaged in contacts with South Carolina that were so systematic and continuous to render them essentially at home in South Carolina. Accordingly, the Court finds that it does not have general personal jurisdiction over the USPA Defendants.

As to specific personal jurisdiction, Plaintiffs have failed to make a *prima facie* showing that their injuries resulted out of the USPA's contacts with South Carolina and that those contacts were sufficient to confer personal jurisdiction. Plaintiffs have not alleged any facts establishing that the USPA Defendants purposefully availed themselves of the privilege of doing business in South Carolina. Indeed, Plaintiffs do not even allege that the USPA Defendants solicited any business in South Carolina. *See* ECF No. 207 at 29 ("The Defendants Ed Scott, Randy Ottinger and the USPA . . . intentionally took the Plaintiffs money for dues for protection [of their] skydiving business . . . .").

While the Fourth Circuit has instructed courts to be "flexible" when analyzing specific personal jurisdiction, there are a number of factors that courts must consider. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014). In the business context, those factors include, but are not limited to, an evaluation of: (1) whether the defendants maintain offices, employees, or agents in the forum state; (2)

whether the defendants own property in the forum state; (3) whether the defendants solicited business in the forum state; (4) whether the defendants engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the forum state's law should govern disputes; (6) whether the defendant made in-person contact with a resident of the forum state while conducting business; (7) the nature, quality, and extent of the communications between the parties; and (8) whether a contract was due to be performed in the forum state. *Id.* The Court has considered these factors and finds that Plaintiffs' Second Amended Complaint falls far short of demonstrating that the USPA Defendants should be subject to specific personal jurisdiction in South Carolina. Accordingly, the Court holds that it lacks personal jurisdiction over the USPA Defendants.

## **CONCLUSION**

For these reasons, the USPA Defendants' Motion to Dismiss, ECF No. 213, is **GRANTED**, and the USPA Defendants are dismissed with prejudice.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

July 23, 2019
Spartanburg, South Carolina